IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


MICHAEL CHARLES McGILL,
         Petitioner,

vs.                                        Case No.:  1:15cv256/WTH/EMT

FLORIDA DEPARTMENT OF CORRECTIONS
SECRETARY,
         Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of
habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 18).  Respondent filed an
answer and relevant portions of the state court record, and Petitioner filed a reply
(ECF Nos. 20, 24, 27).

The case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive matters.
*See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ.
P. 72(b).  After careful consideration of all issues raised by the parties, it is the
opinion of the undersigned that no evidentiary hearing is required for the disposition
of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 27).[1]  Petitioner was charged in the Circuit Court in and for Alachua County, Florida, Case No. 2006-CF-1614, with one count of aggravated stalking–credible threat (Count I), one count of written threats to kill or do bodily injury (Count II), and one count of aggravated stalking–violation of court order (Count III) (Ex. A at 192–94).  Petitioner waived a jury trial (*id.* at 194–96).  A non-jury trial was held on February 19, 2009 (Exs. F, G).  In an order issued the same day, the trial court found Petitioner guilty as charged (Ex. A at 197–99).  On April 30, 2009, Petitioner was sentenced as a habitual violent felony offender to five (5) years in prison on Count I, thirty (30) years in prison on Count II, and five (5) years in prison on Count III, all to run concurrently and with pre-sentence credit of 1,125 days (Ex. B at 203–11, Exs. D, E).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 27).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-2528 (Ex. H). The First DCA affirmed the judgment per curiam without written opinion on May 19, 2010, with the mandate issuing June 4, 2010 (Ex. J). McGill v. State, 35 So. 3d 130 (Fla. 1st DCA 2010) (Table).

On December 27, 2010, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K at 1–16). The state circuit court summarily denied the motion on January 28, 2015 (id. at 65–80). Petitioner appealed the decision to the First DCA, Case No. 1D15-0654 (Ex. M). The First DCA affirmed the decision per curiam without written opinion on June 30, 2015 (Ex. O). McGill v. State, 172 So. 3d 873 (Fla. 1st DCA 2015) (Table). The appellate court denied Petitioner's motion for rehearing, and issued the mandate on September 9, 2015 (Exs. P, Q).

During the pendency of the Rule 3.850 proceeding, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. R). The state circuit court summarily denied the motion on February 18, 2015 (id.).

Petitioner filed the instant federal habeas action on November 17, 2015 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

*See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination

of the facts" standard is implicated only to the extent the validity of the state court's

ultimate conclusion is premised on unreasonable fact finding.  *See* <u>Gill v. Mecusker</u>,

633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause,

the federal court applies an objective test.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340,

123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based

on a factual determination "will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state court

proceeding.").   Federal courts "may not characterize . . . state-court factual

determinations as unreasonable merely because we would have reached a different

conclusion in the first instance."  <u>Brumfield v. Cain</u>, — U.S. —, 135 S. Ct. 2269,

2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all

factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence."  *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that

a federal court can disagree with a state court's factual finding and, when guided by

the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

---

[2] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad

federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law

---

[3] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d [1277,] 1184 [(M.D. Ala. 2004)] (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct.

617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[4] In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state

procedural rules to resolve the federal claim.[5] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause for and prejudice from his procedural default, or a fundamental miscarriage of justice, in order for the federal habeas court to reach the merits of a claim. <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

    A.    Ground One:  Ineffective assistance of counsel

In Ground One, Petitioner presents eighteen (18) sub-claims of ineffective assistance of trial counsel ("IATC") (ECF No. 18 at 6–12).[6]  Respondent concedes Petitioner exhausted each of the IATC claims in the state courts (ECF No. 20 at 14–15).  Respondent contends the state court's adjudication of each claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 15–30).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was

---

[6] The page references to the parties' pleadings reflect the page numbers automatically assigned by the court's electronic docketing system.

unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable

lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002).  To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Jones v. GDCP Warden</u>, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding.  *Id.* (citation omitted).   And Petitioner must show that the likelihood of a different result is substantial, not just conceivable.  <u>Williamson v. Fla. Dep't of Corr.</u>, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing <u>Richter</u>, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Strickland</u>, 466 U.S. at 695.  The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  *Id.* at

694–95.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting <u>Strickland</u>'s high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult."  <u>Richter</u>, 131 S. Ct. at 788. As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

        2.      Federal Review of State Court Decision

            a.    <u>"Counsel failed to request adequate time to properly investigate and familiarize self with case to sufficiently defend defendant."</u>

Petitioner alleges he was appointed four defense attorneys during the 34-month period prior to trial, with his last attorney, Attorney Hedrick, appointed just three months prior to trial (ECF No. 18 at 6). Petitioner alleges Attorney Hedrick visited him once a month prior to trial (*id.*). Petitioner alleges Hedrick did not begin to prepare for trial until six weeks prior to trial, because before that, counsel was solely focused on plea negotiations (*id.*).

Petitioner presented this claim as Ground 1(a) of his Rule 3.850 motion (Ex. K at 24). In the state circuit court's written decision denying each of Petitioner's IATC claims, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (Ex. K at 68–69). The court adjudicated this particular IATC claim as follows:

> As to Ground One - (a), Defendant alleges that trial counsel was ineffective for failing to request adequate time to properly investigate and prepare for trial. The claim raised is conclusively refuted by the record. Defendant's trial occurred on February 19, 2009. The defense presented at trial was an insanity defense. The record reflects that counsel had been preparing this defense since at least a year earlier

(February 8, 2008).  *See* Notice of Intent to Rely on Insanity Defense. Furthermore, Defendant was psychologically evaluated at least five times before trial.  *See* Order Appointing Mental Health Expert for Competency Evaluation (filed September 25, 2006); Order Adjudging Defendant Incompetent to Proceed (filed December 18, 2006); Order Appointing Expert to Evaluate Defendant's Sanity at the Time of the Offense (filed May 9, 2007); Order Adjudging Defendant Incompetent to Proceed (filed May 29, 2007); Competency Evaluation (filed October 29, 2007); Order Finding Defendant Competent (filed November 16, 2007); Order Appointing Expert to Evaluate Defendant's Sanity at the Time of the Offense (filed February 25, 2008); Psychological Evaluation (Dr. Alan Waldman) (filed April 11, 2008); Order Appointing Expert for Competency Evaluation (filed April 23, 2008); Order Appointing Expert for Competency Evaluation (filed May 20, 2008); Psychological Evaluation (Dr. Alan Waldman) (filed May 20, 2008); Psychological Evaluation (Dr. Tonia Werner) (filed June 13, 2008); Order Appointing Mental Health Expert for Competency Evaluation (filed August 15, 2008).  Thus, Defendant's claim that counsel was not prepared for trial, at which Defendant's mental state was the only issue, is contradicted by the record.  Because Defendant fails to show either error by counsel or prejudice, the claim raised is without merit.

(Ex. K at 69–70).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

"[T]he summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also* Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary."). Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* <u>Harrington</u>, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 562 U.S. at 102; *see also* <u>Gill</u>, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The state court record supports the state court's factual finding that on February 8, 2008, more than one year prior to Petitioner's trial, Petitioner's then-counsel (Attorney Floyd) filed a notice of intent to rely on an insanity defense (Ex. K at 145). On December 8, 2008, Petitioner's then-counsel (Attorney Hedrick) filed an amended notice of intent to rely upon an insanity defense (*id.* at 184). The state court record also supports the state court's finding that Petitioner was psychologically evaluated

at least five times prior to trial (Ex. K at 101–44, 146–182).  Prior to trial, Petitioner's

trial counsel, Attorney Hedrick filed a motion to dismiss two of the three charges (on

the ground that the factual allegations in the amended information were too vague to

enable Petitioner to prepare a defense, and that Counts I and III exposed Petitioner to

double jeopardy) (Ex. A at 186–88).  Attorney Hedrick also filed a motion for

statement of particulars (*id.* at 189–91).  The State then filed a second amended

information (*id.* at 192–93).

The transcript of Petitioner's non-jury trial demonstrates that the sole issue

litigated at trial was Petitioner's mental state at the time of the offenses (Exs. F, G).

On the first day of trial, Attorney Hedrick announced that the parties stipulated to

admission of several documents into evidence, which constituted the State's case-in-

chief, and that the parties would submit testimonial evidence from experts solely on

the issue of whether Petitioner was insane at the time of commission of the offenses

(Ex. F at 3–4).  Petitioner stated on the record that he understood and agreed that the

case would proceed in the manner announced by Attorney Hedrick (*id.* at 4).  The trial

court admitted the documents to which the parties stipulated as State's composite

Exhibit 1 (*id.* at 4–8).  Petitioner affirmed on the record that he agreed to allow the

court to receive the documents into evidence (*id.* at 8).  The State immediately rested

its case (*id.* at 14).   Attorney Hedrick made a motion for judgment of acquittal ("JOA"), and the court took the motion under advisement (*id.* at 14–32).   Attorney Hedrick presented testimony of two expert witnesses, Dr. Adu and Dr. Levin, as well as documentary evidence on the issue of Petitioner's sanity at the time of the offenses (Ex. F at 33–101, Ex. G at 155–99, 243–49).   The State then presented testimony of two expert witnesses, Dr. Warner and Dr. Waldman, on rebuttal, and Attorney Hedrick cross-examined these witnesses (Ex. F at 103–24, Ex. G at 129–55, 205–42).

In Petitioner's § 2254 petition, Petitioner does not allege any facts to support his argument was Attorney Hedrick was unprepared at trial.   The mere fact that Hedrick was appointed just three months prior to trial does not, of itself, demonstrate lack of preparation.   By the time Hedrick commenced representation of Petitioner, the record was well-developed on the sole issue in the case, that is, Petitioner's sanity at the time of the offense.   The trial transcript shows that Attorney Hedrick was well prepared on the insanity issue.   Hedrick's presentation of testimony from two expert witnesses, his cross-examination of the State's two expert witnesses, and his argument for a judgment of acquittal reflects a reasonable presentation of Petitioner's insanity defense.   Petitioner does not allege what additional preparation Attorney Hedrick

could have done, nor has Petitioner shown a reasonable probability the result of his trial would have been different if Hedrick had engaged in any additional preparation.

The state court reasonably rejected Petitioner's IATC claim regarding Attorney Hedrick's alleged failure to adequately prepare for trial. Therefore, Petitioner is not entitled to habeas relief on Ground One, sub-claim (a).

> b. <u>"Counsel failed to act sufficiently and competently in circumstance favorably to defendant and stipulates [sic] to a deal that violates defendant's Sixth Amendment right."</u>

Petitioner alleges at a pre-trial status conference, the State requested additional time to locate witnesses, and the trial court granted a continuance (ECF No. 18 at 6). Petitioner alleges despite the continuance, the State was still unable to locate the witnesses (*id.*). Petitioner alleges defense counsel stipulated to admission of the witnesses' deposition testimony in lieu of their trial testimony (*id.*). Petitioner contends defense counsel's stipulation constituted ineffective assistance, because it prevented Petitioner from exercising his rights under the Confrontation Clause (*id.*).

Petitioner raised this claim as Ground 1(b) of his Rule 3.850 motion (Ex. K at 7). The state circuit court adjudicated the claim as follows:

> As to Ground One - (b), Defendant alleges that trial counsel was ineffective for failing to act efficiently in circumstances favorable to Defendant. According to Defendant, counsel should have forced the State to call witnesses who were *unavailable* for trial. Defendant

> contends that had these unavailable witnesses testified, he would have
> been found not guilty.  The defense cannot force the State to call
> witnesses at trial.  Furthermore, Defendant's claim that these unnamed
> witnesses' testimony would have affected the outcome of his trial is
> speculative and conclusory.  For these reasons, Defendant fails to show
> either error by counsel or prejudice.  Accordingly, the claim raised is
> without merit.

(Ex. K at 70) (emphasis in original).  The First DCA affirmed the circuit court's

decision without written opinion (Ex. O).

The trial transcript shows that Attorney Hedrick stipulated to admission of the

depositions of nine witnesses in lieu of their live testimony, including Cassie Nowacki

(the victim), Anna Elizabeth Strayer, Patrick Tombler, Michael Moore, Paul Ray, Shin

Lay Chu, Matt Barr, Fredwina Gough, and Leonardo Mata (Ex. F at 6–7).

Petitioner failed to show that the outcome of trial would have been different if

Attorney Hedrick had objected to admission of the deposition testimony.  The Florida

Evidence Code provides that hearsay evidence is inadmissible except as provided by

statute.  *See* Fla. Stat. § 90.802.  The Code further provides, in relevant part:

> **(2)  Hearsay exceptions**.—The following are not excluded under s.
> 90.802, provided that the declarant is unavailable as a witness:
>
> (a) *Former testimony*.—Testimony given as a witness at another hearing
> of the same or a different proceeding, or in a deposition taken in
> compliance with law in the course of the same or another proceeding, if
> the party against whom the testimony is now offered, or, in a civil action

or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fla. Stat. § 90.804(2)(a).

Petitioner does not allege that defense counsel did not have an opportunity and similar motive to develop each witness' testimony by cross examination during his or her deposition, nor does Petitioner allege that the live testimony of any witness would have been different than his or her deposition testimony. Further, Petitioner has not shown a reasonable probability that the outcome of trial would have been different if defense counsel had objected to admission of any of the deposition testimony.

The state court's adjudication of this IATC claim was not an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to relief on Ground One, sub-claim (b).

    c. <u>"Counsel failed to argue that defendant's case be transferred to the appropriate court."</u>

Petitioner claims defense counsel was ineffective for failing to file a motion to transfer the case from Division III (Criminal) to Division V (Felony Forensics) of the circuit court, because the case involved mental health issues (ECF No. 18 at 7). Petitioner further argues that the prosecutor and the court focused on Petitioner's sanity before and after the crime, instead of at the time of the crimes (*id.*). Petitioner

contends if the case had been moved from the criminal division to the "felony forensics" division, the case would have properly focused on Petitioner's sanity at the time of the offenses (*id.*).

Petitioner presented this claim as Ground 1(c) of his Rule 3.850 motion (Ex. K at 7). The state circuit court adjudicated the claim as follows:

> As to Ground One - (c), Defendant alleges that trial counsel was ineffective for failing to argue that Defendant's case be switched to the appropriate court. According to Defendant, counsel should have moved to have his case transferred back to "mental health court." During the period when he was incompetent to proceed, Defendant's case was in Division V (Felony Forensics), which is the court's division for defendants who are either incompetent to proceed or not guilty by reason of insanity. *See* Order Adjudging Defendant Incompetent to Proceed (filed December 18, 2006). After Defendant's competency was restored, his case was returned to a standard criminal division. *See* Order Finding Defendant Competent (filed November 16, 2007). Given the fact that Defendant was subsequently continuously determined to be competent to proceed, there was no reason for his case to be returned to Division V. Defendant's claim that the outcome of his trial would have been different had it been considered by the Division V judge is mere speculation and conjecture. For this reason, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

(Ex. K at 70–71). The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of <u>Strickland</u>,

when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[7]; *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida

---

[7] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007).

Supreme Court's conclusion that the proposed objection would have been overruled

was binding and precluded federal habeas relief on the ineffective assistance claim:

"The Florida Supreme Court already has told us how the issues would have been

resolved under Florida state law had [petitioner's counsel] done what [petitioner]

argues he should have done . . . . It is a 'fundamental principle that state courts are the

final arbiters of state law, and federal habeas courts should not second-guess them on

such matters.'") (alterations in original) (quoting Agan v. Vaughn, 119 F.3d 1538,

1549 (11th Cir. 1997)).

Here, as in Alvord, Callahan, and Herring, the state court has already answered

the question of whether defense counsel had a meritorious basis for seeking transfer

of the case from the criminal division to another division of the circuit court—counsel

did not.[8] This court must defer to the state court's determination of state law. The

failure by defense counsel to seek transfer of the case to Division V, after Petitioner

---

[8] The question involved is not one of jurisdiction. In Florida, the circuit court has jurisdiction as prescribed by the Constitution and general law. *See* Fla. Const. Art. V § 5; Fla. Stat. § 26.012. That jurisdiction includes jurisdiction over all felony matters. *See* Fla. Stat. § 26.012(2)(d). All of the judges of the circuit court are authorized to exercise that court's jurisdiction. *See* In re Guardianship of Bentley, 342 So. 2d 1045, 1046 (Fla. 4th DCA 1977). For purposes of efficiency in administration, the circuit court is frequently divided into divisions, with each division handling certain types of cases. *See id.* at 1047. In Petitioner's case, a circuit judge in Division V (the forensic felony division) ordered the case transferred to Division III (the criminal division) on November 15, 2007, upon determining that Petitioner was competent to proceed (Ex. A at 112–14).

had been deemed competent to proceed and the circuit judge in Division V ordered the case transferred to Division III (*see* Ex. A at 112–14), cannot be deemed deficient performance, and Petitioner cannot show he was prejudiced by counsel's failure to raise this issue, because it had no arguable basis for success.

The state court's adjudication of the IATC claim presented in Ground One, sub-claim (c) was not unreasonable.  Therefore, Petitioner is not entitled to federal habeas relief on this claim.

> d.    <u>"Counsel failed to call critical witnesses for defendant's defense."</u>

> e.    <u>"Counsel failed to provide critical documents for defense."</u>

Petitioner alleges the criminal charges stemmed from an incident that occurred while he was in a psychiatric unit (the Crisis Stabilization Unit of Meridian Behavior Healthcare ("Meridian")), where mental health professionals had diagnosed him with a major mental illness (ECF No. 18 at 7).  Petitioner contends Attorney Hedrick was ineffective for failing to present expert testimony and medical records from Meridian, because that was the only evidence of his mental state and diagnosis at or near the time he committed the offenses and thus would have assisted the trial judge in determining Petitioner's mental state at that time (*id.*).

Petitioner raised these claims as Grounds 1(d) and 1(e) of his Rule 3.850 motion

(Ex. K at 8).  The state circuit court adjudicated the claims as follows:

> As to Ground One - (d), Defendant alleges that trial counsel was
> ineffective for failing to call critical witnesses at trial.  According to
> Defendant, counsel should have called the doctors who were treating him
> around the time of the offense.  At trial, the State and defense stipulated
> that the court could rely upon the deposition testimony of the persons at
> Meridian Behavioral Healthcare during the time of the offenses.  *See*
> Trial Transcript at 4 (lines 19–25) – 8 (lines 1–5); State's Discovery
> Exhibit.  In addition, the experts evaluating Defendant's sanity relied
> upon his medical records from the time of the offenses.  *Id.* at 39 (lines
> 4–25) – 101 (lines 1–23), 158 (lines 6–25) – 198 (lines 1–15), 222 (lines
> 16–25) – 242 (lines 1–9).  Because this information was available and
> relied upon by the experts in this case, Defendant fails to show either
> error by counsel or prejudice in counsel's failing to call Defendant's
> prior doctors. Accordingly, the claim raised is without merit.

> As to Ground One - (e), Defendant alleges that trial counsel was
> ineffective for failing to provide critical documents for trial that were
> readily accessible.  According to Defendant, counsel erred by failing to
> provide the court with his medical records.  As indicated in the
> paragraph above, the experts in this case reviewed the Defendant's
> medical records from the time of the offense.  And, based on their review
> of these records, they opined as to his sanity at the time of offense.
> Thus, it is irrelevant that the court was not provided with the medical
> records.  As the court noted in its Order Denying Defendant's Motion for
> Judgment of Acquittal and Finding Defendant Guilty as Charged, "it is
> apparent from the disturbing evidence and the expert witness testimony
> presented at trial that the Defendant has a mental disease or defect. . . ."
> Thus, Defendant's mental illness was not in dispute.  For this reason,
> Defendant fails to show either error by counsel or prejudice caused by
> counsel's failure to provide the court with his medical records.
> Accordingly, the claim raised is without merit.

(Ex. K at 71–72).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  If the record is not complete regarding counsel's actions, then the courts should presume "that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some reasonable lawyer might do."  Id. at 1314–15 n.15.  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."  Waters, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

The Second Amended Information charged Petitioner with committing aggravated stalking and written threats to kill or do bodily injury during the period March 23, 2006, through June 1, 2006 (Ex. A at 192–93, Ex. F at 9–10).  The trial

transcript supports the state court's factual finding that the defense experts who testified at Petitioner's trial discussed the diagnoses of the mental health professionals who treated Petitioner at Meridian during his two-week admission from March 9–23, 2006.  Dr. Adu, a psychiatrist, testified that he evaluated Petitioner twice, the first time on October 16, 2006, and the second time on May 12, 2007 (Ex. F at 33–101).  Dr. Adu testified regarding Petitioner's history of admissions to psychiatric units, including that Petitioner was admitted to Meridian on March 9, 2006, that the admission lasted for two weeks, and that the treating psychiatrists diagnosed Petitioner with post-traumatic stress disorder ("PTSD") and schizoeffective disorder (*id.*).  Dr. Levin, a psychologist, testified that he evaluated Petitioner on four occasions, with the first occurring on July 20, 2006 (Ex. G at 156–99).  Dr. Levin testified that Petitioner's medical records from Meridian were the "most significant," and that those records reflected that Petitioner was diagnosed with schizoeffective disorder (*id.*).

Additionally, one of the exhibits admitted by Attorney Hedrick at trial was a report from the North Florida Evaluation and Treatment Center ("NFETC"), dated March 29, 2007, which recounted Petitioner's history of admissions to Meridian and

the diagnoses of the mental health professionals at Meridian (*see* Ex. G at 243–49, Ex. A at 68–78).[9]

In the trial court's order finding Petitioner guilty of the charges, the court set forth the basis for its finding of guilt:

2) The Defendant has entered a plea of not guilty by reason of insanity.

A plea of not guilty by reason of insanity requires that the Defendant prove by clear and convincing evidence that:

    a. He had a mental infirmity, disease, or defect.

    b. Because of this condition

        l. He did not know what he was doing or its consequences or

---

[9] The NFETC report stated, in relevant part:

He was admitted to the Crisis Stabilization Unit (CSU) at Meridian Behavioral Health Care, Incorporated in Gainesville, Florida on a law enforcement Baker Act petition in July 2005 and again in November 2005. Mr. McGill voluntarily admitted himself to the Meridian Behavioral Health Care Crisis Stabilization Unit from March 9–23, 2006 after he complained of experiencing homicidal thoughts and having a plan to harm women. Mr. McGill received a diagnosis of "Schizophrenia, Chronic, Paranoid Type; and Substance Abuse Disorder." He was prescribed Geodon, Prozac, and Lithium. Further, the Court-appointed evaluator's report indicates that Mr. McGill has had four admissions to Meridian Behavioral Health Care. During those admissions, he was diagnosed with "Schozoaffective Disorder'" and was treated with Seroquel, Geodon, Risperidone, Prozac, Depakote, and Lithium. Whenever Mr. McGill was discharged, he stopped taking the prescribed medications.

(Ex. A at 70).

2.    Although he knew what he was doing and its consequences, he did not know it was wrong.

3)  While it is apparent from the disturbing evidence and the expert witness testimony presented at trial that the Defendant has a mental disease or defect, the Defendant has failed to prove that he did not know what he was doing or its consequences or that his actions were wrong. The evidence presented at trial showed, among other details, that the Defendant

a.  took actions to hide his identity while making phone calls to the victim.

b.  took pleasure in causing the victim distress by his actions.

c.  recognized that his disturbing drawings are an outlet for his urges to harm women.

d.  appears to have been faking or malingering as to the audio hallucinations that he claimed.

e.  claims to have harmed other women, but has withheld the details when pressed, claiming the Fifth Amendment.

(Ex. A at 197–99).

Although the state court record shows that the mental health professionals who evaluated Petitioner at Meridian would have testified that Petitioner suffered from schizoeffective disorder, Petitioner failed to show that any of them would have testified to facts which would have satisfied the other criteria for an insanity defense, specifically, that because of Petitioner's mental disorder he either (1) did not know

what he was doing or its consequences, or (2) knew what he was doing and its consequences, but did not know that what he was doing was wrong.  *See* Fla. Stat. § 775.027(1); Fla. Stat. § 775.027(2) (defendant has the burden of proving the defense of insanity by clear and convincing evidence).

The state court reasonably concluded that Petitioner failed to demonstrate either deficient performance or prejudice with regard to Attorney Hedrick's failure to present testimony from the treating mental health professionals from Meridian, or Hedrick's failure to admit medical records from Meridian at trial.  Therefore, Petitioner is not entitled to relief on Ground One, sub-claims (d) and (e).

> f.    "Counsel did not move to strike a State expert witness who showed biased and vindictive actions toward defendant."
>
> g.    "Counsel failed to challenge stricken evidence that was still used at trial."

Petitioner alleges he filed a complaint with the American Psychiatric Association ("APA") against one of the State's experts, Dr. Waldman, complaining that Waldman exhibited "unethical conduct and biased demeanor" during his first evaluation (a sanity evaluation) of Petitioner (ECF No. 18 at 8).  Petitioner alleges Dr. Waldman subsequently attempted to conduct a competency evaluation, but Petitioner refused to participate, based upon Waldman's conduct during the first evaluation (*id.*).

Petitioner alleges Dr. Waldman then retaliated by submitting a "vindictive and harmful" report (*id.*).  Petitioner additionally alleges Dr. Waldman's competency report failed to comply with Florida's procedural rules regarding competency reports and was stricken from the record (*id.*).  Petitioner alleges he informed Attorney Hedrick of the APA complaint and provided Hedrick with the APA's response to his complaint, but Hedrick failed to bring the matter to the trial court's attention until sentencing (*id.*).  Petitioner contends Attorney Hedrick was ineffective for failing to move to strike Dr. Waldman's testimony and competency report (*id.*).

Petitioner presented these IATC claims as Grounds 1(f) and (g) of his Rule 3.850 motion (Ex. K at 8, 9).  The state circuit court adjudicated the claims as follows:

> Defendant alleges that trial counsel was ineffective for failing to move to strike the State's "key and only sanity evaluator as a witness." According to Defendant, counsel should have moved to strike Dr. Waldman's testimony regarding his sanity because he (Defendant) filed a complaint against him with the American Psychiatric Association. Defendant's self-serving and conclusory complaints against Dr. Waldman are not a valid basis for counsel to move to strike his testimony.  At trial, Dr. Waldman was cross-examined on the factual basis for his opinion on Defendant's sanity at the time of the offenses. *See* Trial Transcript at 223 (lines 17–25) – 238 (lines 1–1 7), 241 (lines 13–25) – 242 (lines 1–9).  Thus, the court had an opportunity to consider and weigh Dr. Waldman's testimony compared to the testimony of the other experts.  For this reason, Defendant fails to show either error by counsel or prejudice.

(Ex. K at 72).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

The record demonstrates that on April 1, 2008, the court appointed Dr. Waldman to evaluate Petitioner's sanity at the time of the offenses (Ex. A at 121–23). Dr. Waldman filed his report on April 16, 2008, opining that there was no evidence that at the time of the offenses, Petitioner suffered from any mental illness that would impair his capacity to know right from wrong or knowing the nature and quality of his acts (*id.* at 124–32).  On April 22, 2008, the trial court appointed Dr. Waldman to evaluate Petitioner's competency (*id.* at 136–39).  On May 20, 2008, Dr. Waldman filed his report opining that Petitioner was competent to proceed (*id.* at 143–46).  On July 9, 2008, defense counsel filed a motion to strike Dr. Waldman's competency report, on the ground that the report did not expressly address the six factors enumerated in Rule 3.211 of the Florida Rules of Criminal Procedure (*see id.* at 170–71).[10]  There is no evidence in the record that the court ruled on defense counsel's motion.

---

[10] Rule 3.211 provides, in relevant part, that in considering the issue of competence to proceed, the examining expert shall consider and include in his or her report the defendant's capacity to (1) appreciate the charges or allegations against the defendant, (2) appreciate the range and nature of possible penalties, if applicable, that may be imposed in the proceedings against the defendant, (3) understand the adversary nature of the legal process, (4) disclose to counsel facts pertinent to the proceedings at issue, (5) manifest appropriate courtroom behavior, and (6) testify relevantly. *See* Fla. R. Crim. P. 3.211(a)(2).

As the state court determined, Petitioner failed to show that Attorney Hedrick had a meritorious basis to "strike," or otherwise seek to preclude, Dr. Waldman's trial testimony, simply because Petitioner had filed a complaint against him with the APA. With regard to Dr. Waldman's competency report, there is no evidence that the court had previously ordered the report stricken from the record.  And even if the report failed to include findings as to each of the competency factors enumerated in Rule 3.211, the report contained information relevant to the issue of Petitioner's sanity at the time of the offenses.

The state court's adjudication of Petitioner's IATC claims was not an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to relief on Ground One, sub-claims (f) and (g).

> h.    "Counsel failed to challenge improper evidence at sentencing."

Petitioner alleges at sentencing, the prosecutor submitted drawings and letters allegedly composed by Petitioner (ECF No. 18 at 8–9).  Petitioner alleges Attorney Hedrick failed to object to admission of the documents, on the ground that they were not originals but copies, and there was no proof that Petitioner authored them (*id.*).  Petitioner also alleges Hedrick failed to object to admission of a document authored by Petitioner, titled "Bloody Christmas" (the subject of which was a police officer's

murdered family), on the ground that it was not a <u>letter</u> as the prosecutor claimed, but

a <u>poem</u>, and there was no evidence that Petitioner authored it (*id.*).

Petitioner presented this claim as Ground 1(h) of his Rule 3.850 motion (Ex. K

at 9). The state circuit court adjudicated the claim as follows:

> As to Ground One - (h), Defendant alleges that trial counsel was ineffective for failing to challenge improper prosecution evidence at sentencing. According to Defendant, the State introduced drawings at sentencing without proof that he was the person who created them. *See* Sentencing Transcript at 9 (lines 15–24). Defendant contends that counsel should have objected to their introduction into evidence. At no point under this ground does Defendant deny having authored the artwork which was introduced into evidence at sentencing. It is inconceivable that the defense counsel, who had previously stipulated to the introduction of other artwork by Defendant, had not seen and confirmed that this was Defendant's artwork. In addition, Defendant introduced artwork at sentencing at well. *Id.* at 20 (lines 1–17). Thus, there was sufficient evidence of Defendant's artwork in evidence for both counsel and the court to determine that Defendant was the person who created it.[FN 2] For these reasons, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

> > [FN2: In Supplemental Ground (N), Defendant *admits* that he created the artwork which was introduced by the State at sentencing.]

(Ex. K at 73). The First DCA affirmed the circuit court's decision without written

opinion (Ex. O).

The state court's factual findings are supported by the record. At sentencing, Attorney Hedrick provided the court with some of Petitioner's artwork (including a portrait of the trial judge and the sheriff) to demonstrate that the State's selection of Petitioner's most offensive artwork was not representative of his artwork:

> MR. HEDRICK: . . . [T]here's been a lot of talk about Mr. McGill's artwork. A lot of that artwork was confiscated from Mr. McGill at the county jail. We don't want the Court to think that that is Mr. McGill's only artistry, because they picked and choosed [sic] what they wanted to take away from him.
>
> Mr. McGill has provided to me some other portraitures which he has done. We would ask the Court to review this. I'll be happy to let Mr. Ezzell [the prosecutor] look through them. But this is just representative of the artwork that Mr. McGill is capable of and has actually done.
>
> I will advise the Court, one of the matters in there is a portrait of Your Honor, which Mr. McGill has done from memory.
>
> In addition to this—I don't have a copy of it—but I understand that Mr. McGill also did a portrait of our sheriff, Sheriff Darnell, which he had presented to her. So, I just wanted the Court to review that.

(Ex. E at 358–59).

As the state court pointed out, Petitioner did not deny that he was the author of the artwork submitted by the State. Petitioner failed to show a reasonable probability of a different outcome at sentencing if Attorney Hedrick had objected to admission

of the artwork on grounds of lack of authentication.   The state court did not unreasonably apply <u>Strickland</u> in denying Ground One, sub-claim (h).

> i.   "Counsel failed to assert meritous [sic] right to dismissal or discharge due to violation of the defendant's right to speedy trial."

Petitioner alleges on July 13, 2006, two months after he was ordered detained without bond, he was asked to sign a waiver of his speedy trial rights (ECF No. 18 at 9).   Petitioner alleges he declined to sign the waiver and clearly stated he wanted a speedy trial within six (6) months (*id.*).   Petitioner alleges defense counsel waived his speedy trial rights without Petitioner's consent, in violation of his Sixth Amendment right (*id.*).

Petitioner presented this claim as Ground 1(i) of his Rule 3.850 motion (Ex. K at 10).   The state circuit court adjudicated the claim as follows:

> As to Ground One - (i), Defendant alleges that trial counsel was ineffective for failing to assert a meritorious right to dismissal or discharge due to a violation of Defendant's right to a speedy trial.   The record reflects that counsel waived Defendant's right to a speedy trial. *See* Waiver of Speedy Trial.   For this reason, counsel did not err for failing to move to dismiss the charges or move to discharge Defendant based on his failure to receive a speedy trial.   In addition, Defendant's competency was at issue during the pendency of most of this case.   For these reasons, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

(Ex. K at 73–74). The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

As an initial matter, under Florida law defense counsel may waive a criminal defendant's speedy trial rights without first consulting the defendant, may do so outside of the defendant's presence, and may even do so against the defendant's wishes. *See* Randall v. State, 938 So. 2d 542, 544 (Fla. 1st DCA 2006) (citations omitted); State v. Kruger, 615 So. 2d 757, 759 (Fla. 4th DCA 1993); MacPhee v. State, 471 So. 2d 670, 671 (Fla. 2d DCA 1985); Blackstock v. Newman, 461 So. 2d 1021, 1022 (Fla. 3d DCA 1985). Petitioner failed to show that defense counsel was deficient simply because counsel waived Petitioner's state statutory right to a speedy trial without Petitioner's consent.

Petitioner likewise failed to establish ineffective assistance with regard to counsel's failure to assert Petitioner's federal constitutional right to a speedy trial. In determining whether a particular defendant has been deprived of his Sixth Amendment right to a speedy trial, the court should assess four factors: (1) length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *See* Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

Here, the court will assume that the 34-month delay in bringing Petitioner to trial is "presumptively prejudicial," thereby necessitating inquiry into the last three factors of the Barker test.  *See* Barker, 407 U.S. at 530 ("The length of the delay [the first factor] is to some extent the triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); Doggett v. United States, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (when the delay between arrest or indictment and trial is more than one year, there is a presumption of prejudice sufficient to trigger application of the four-part Barker test as a whole).

The second Barker factor, that is, the reason for the delay, does not weigh in Petitioner's favor.  As the state court found, the delay in the proceedings was due to Petitioner's incompetence and his assertion of an insanity defense, both of which required the appointment of numerous experts to evaluate both Petitioner's competency and his sanity at the time of the offenses.[11]

---

[11] The state court docket shows that Petitioner was arrested on April 13, 2006, and released the next day on bail with the condition that he have no contact with the victim (*see* Ex. A at 7–8, 13). On May 2, 2006, the prosecutor filed a motion to revoke Petitioner's bond, on the ground that he had contact with the victim (*id.* at 14–31).   On May 3, 2006, the court ordered Petitioner held without bond (*id.* at 32).   On  September 25, 2006, the court appointed an expert to evaluate Petitioner's competency (*id.* at 39–43).  The court adjudicated Petitioner incompetent on December 18, 2006 (*id.* at 52–58).  Petitioner was restored to competency on November 16, 2007 (*id.* at 112–14).  On February 8, 2008, the defense filed a notice of intent to rely on an insanity defense. From that date until Petitioner's trial one year later, several experts evaluated Petitioner's sanity.

Similarly, the third <u>Barker</u> factor does not weigh in Petitioner's favor. Although a defendant's Sixth Amendment right to a speedy trial is not waived unless the defendant knowingly and voluntarily waives it, *see* <u>Barker</u>, 407 U.S. at 525–29, the only evidence that Petitioner asserted his right prior to trial is his assertion that at a pre-trial hearing on July 13, 2006, he refused to sign a waiver of speedy trial and stated that he wanted a trial within six months. Over two years later, on November 17, 2008 (approximately the same date Petitioner was determined competent), Petitioner wrote a letter to the trial judge stating he was "ready to have this case resolved" and wished to "bring this case to its conclusion immediately" (*id.* at 177). Petitioner refused to appear at a case management conference held on December 29, 2008, at which the case was set for trial the week of February 16, 2009 (*see id.* at 179–80). On January 30, 2009, Petitioner wrote another letter to the court requesting a "quick & satisfying resolution," and offering to plead guilty if the State agreed to execute him by lethal injection (*id.* at 196). Trial was held on February 19, 2009. The record demonstrates that Petitioner did not actively assert his right to a speedy trial until November of 2008, and his trial occurred just three months later. The third <u>Barker</u> factor does not weigh heavily in Petitioner's favor.

With regard to the fourth and final factor, the prejudice to Petitioner, where—as here—the delay was not the result of bad faith or a deliberate attempt to "hamper the defense," and was a reasonable and efficient use of judicial resources, a defendant is required to show he suffered actual prejudice in order to prevail. Ringstaff v. Howard, 885 F.2d 1542, 1545 (11th Cir. 1989). In Barker, the Court noted that prejudice should be assessed in light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. Of these three interests, the Supreme Court characterized the third as being the most significant. *Id.* Assuming that the delay in this case caused Petitioner anxiety and concern that his rights would not be honored, and subjected him to oppressive pre-trial incarceration, Petitioner failed to show that the delay in any way affected his ability to adequately prepare or present his insanity defense, the sole issue litigated at Petitioner's trial. Evidence pertinent to this issue was being developed by both the prosecution and defense during the delay. Moreover, in light of the limited issue to be litigated, the usual concerns about delay—including lost fact witnesses or witnesses' fading memories—were absent. Therefore, the fourth Barker factor does not weigh in Petitioner's favor.

Petitioner failed to show that defense counsel's waiver of Petitioner's statutory speedy trial rights, or counsel's failure to assert Petitioner's constitutional speedy trial right, was deficient, or that there is a reasonable probability the outcome of trial would have been different if defense counsel had asserted Petitioner's right to a speedy trial. Therefore, the state court reasonably applied <u>Strickland</u> in denying Ground One, sub-claim (i).

          j.    <u>"Counsel failed to utilize expert consultation during trial."</u>

Petitioner alleges the trial court permitted both parties' experts to remain in the courtroom during the opposing experts' testimony (ECF No. 18 at 9). Petitioner alleges the prosecutor conferred with the State's experts in cross-examining the defense's experts, but Attorney Hedrick failed to engage in such consultations with defense experts (*id.*). Petitioner alleges this resulted in insufficient cross-examination of the State's experts (*id.*).

Petitioner presented this claim as Ground 1(j) of his Rule 3.850 motion (Ex. K at 10). The state circuit court adjudicated the claim as follows:

> As to Ground One - (j), Defendant alleges that trial counsel was ineffective for failing to obtain expert consultation during trial. According to Defendant, his counsel was deficient for failing to consult with the defense experts during trial. Defendant['s] contention that this somehow affected the outcome of his trial is nothing more than speculation and conjecture. For this reason, Defendant fails to show

either error by counsel or prejudice.  Accordingly, the claim raised is without merit.

(Ex. K at 74).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

The state court's adjudication of Petitioner's claim was reasonable.  Petitioner's allegation that Attorney Hedrick's cross-examination of the State's expert would have been more effective if Hedrick had consulted with defense experts during trial is vague and conclusory.  Petitioner does not allege what additional facts or impeachment material would have been brought out on cross-examination if Attorney Hedrick had consulted with defense experts during trial.  The state court reasonably concluded that Petitioner failed to satisfy either prong of the <u>Strickland</u> standard. Therefore, Petitioner is not entitled to habeas relief on Ground One, sub-claim (j).

> k.    "<u>Counsel failed to object to misrepresentation and fabrication of Defendant's criminal history.</u>"

Petitioner alleges the prosecutor elicited testimony regarding Petitioner's criminal history from its expert witnesses during trial (ECF No. 18 at 10).  Petitioner alleges the State's experts referenced five crimes and opined that the crimes did not reflect crimes of an insane person (*id.*).  Petitioner alleges only one of the five crimes actually resulted in a conviction (*id.*).  Petitioner alleges Attorney Hedrick was

ineffective for failing to object to the questioning on the ground that Petitioner's criminal history was misrepresented (*id.*). Petitioner argues he was prejudiced, because the prosecutor described Petitioner's criminal history as including "white collar crimes," which showed that Petitioner was capable of "scheming and planning" (*id.*).

Petitioner presented this claim as Ground 1(k) of his Rule 3.850 motion (Ex. K at 10). The state circuit court adjudicated the claim as follows:

> As to Ground One - (k), Defendant alleges that trial counsel was ineffective for failing to object to misrepresentation and irrelevance of Defendant's criminal history. According to Defendant, counsel should have objected to the State's use of his criminal history during trial. The record reflects that [] Dr. Waldman relied upon Defendant's criminal history to opine that his criminal history was not consistent with a person who has a thought disorder. *See* Trial Transcript at 220 (lines 11–25) – 221 (lines 1–23). Because Defendant's criminal history was relied upon in reaching his opinion, it was permissible for the State to inquire on this matter with Dr. Waldman. Furthermore, counsel did object to the introduction of this testimony prior to a foundation being laid for its relevance. *Id.* For these reasons, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

(Ex. K at 74–75). The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

At trial, the written reports from each of the mental health expert's evaluations of Petitioner were admitted into evidence.[12]   During the prosecutor's direct examination of Dr. Werner, the prosecutor questioned Werner about the legal history section of her report, which included information Petitioner provided her during her interview:

> Q [by the prosecutor].  On top of page four, for the Court and for the witness, talking about his prior arrests or prior criminal history; prior convictions.  You tell the Court what types of crimes has Mr. McGill— did he replay [sic], or that he's been in trouble with in the past.
>
> A.   He relayed that he had been—had previous charges of aggravated stalking, burglary, a personal crime, damage to property, trespassing, violation of probation, robbery, larceny, grand theft, petit theft, defrauding a pawn broker, forging and uttering, and a retail theft.
>
> Q.  And had he also been convicted of robbery?
>
> A.  Yes.  And he acknowledged that he had served time before in the Department of Corrections.

(Ex. F at 109; *see also* Ex. A at 149–50).

---

[12] Dr Adu's reports, dated October 16, 2006, and May 17, 2007, were admitted as Defense Exhibits 1 and 2 (Ex. F at 61; *see also* Ex. A at 45–51, Ex. K at 108–15).  Dr. Levin's reports, dated July 20, 2006, April 30, 2007, May 14, 2007, and April 15, 2008, were admitted as Defense Exhibits 3, 4, 5, and 6 (Ex. G at 155–56; *see also* Ex. A at 83–86).  Dr. Werner's report, dated June of 2008, was admitted as State's Exhibit 2 (Ex. F at 108; *see also* Ex. A at 147–55).  Dr. Waldman's reports, dated April 2, 2008, and May 9, 2008, were admitted as State's Exhibits 3 and 4 (Ex. G at 207; *see also* Ex. A at 124–32, 143–46).  Additionally, a medical discharge note and two discharge summaries from NFETC, dated March 29, 2007, and October of 2007, were admitted as Defense Exhibits 7, 8, and 9 (Ex. G at 206, 243–49; *see also* Ex. A at 64–78, 91–100).

Dr. Werner also discussed Petitioner's criminal history in the context of her

diagnosis of antisocial personality disorder:

> Q [by the prosecutor].  Okay.  Were you able to opine, Doctor, whether or not Mr. McGill suffered from any mental illness?
>
> A.  Yes, I did.
>
> Q.  And what was your conclusion?
>
> A.  My conclusion was that he did not suffer from a major Axis I mental illness at the time of my evaluation.  On Axis II, I did diagnose him with antisocial personality disorder.
>
> Q.  What is antisocial personality disorder?
>
> A.  Antisocial personality disorder is kind of a long-standing pervasive pattern of disregard and violation for the rights of others.  In his history, his legal history dates back to his first arrest at age 16.  He showed no remorse for any of his actions.  Previously, I think even Dr. Adu attested to that earlier; that there was no remorse.  He's shown a definite failure to conform to social norms within society and be able to be unlaw—be able to be lawful.  He has impulsivity, failure to plan ahead.  All of these things are indicative of that.  There's irritability and aggressiveness, as indicated by repeated failure to sustain consistent work behavior or honor his financial obligations.  And the big thing was the lack of remorse or rationalization for having hurt or mistreated others.

(Ex. F at 114–15).  Dr. Werner's testimony regarding the criminal history, that

Petitioner himself relayed to her, was relevant to her evaluation and diagnosis of

Petitioner's mental state and her opinion as to whether he was sane at the time of the

offenses in 2006.  Petitioner failed to show that Attorney Hedrick's failure to object to Dr. Werner's testimony was unreasonable, or that there is a reasonable probability the trial court would have sustained an objection to the testimony.  Therefore, Attorney Hedrick was not ineffective in failing to object.

The prosecutor also questioned its second expert witness, Dr. Waldman, about information Petitioner relayed to him regarding prior crimes:

Q.  What was his affect while he was talking with you?

A.  It was normal at first, then became rather eerily spooky as he started to talk to about his desire to eviscerate women, his desire to shoot the victim in this particular case, telling me about the weapon that he purchased, and then telling me about other crimes that he says he perpetrated.  But in no way did he evince anything that would resemble psychosis or loss of touch with reality.

Q.  Did you ask him if he had ever tried to rape or kill a female before this.

A. Yes, I did.

Q.  Did he indicate if he had?

A.  Yes.

Q.  What was his response?

A.  His response was that he had raped and beat—

MR. HEDRICK:  I'm going to object to this unless this is relevant to the diagnosis or the opinion.  Otherwise, it's just bad character evidence.

THE COURT:  How is this relevant?

MR. EZZELL:  Most notably, in his response to where he takes it. Eventually, he concedes certain things to the doctor; that he may have harmed a woman in the past or multiple women in the past.  When asked or probed further, where was this, or how did you do it, things like that, he says, I take the 5th Amendment, which again evidences a desire to either be manipulative, to withhold information, or to appreciate the consequences of his actions and know right from wrong; that this is certainly something that could get him in trouble.

THE COURT:  Anything further, Mr. Hedrick?

MR. HEDRICK:  Unless the doctor says that's where this is going, all I see this is is [sic] bad character evidence.  The fact that he was able in March of 2008 to express those opinions has nothing to do—unless it can be related back to March of 2006, it's irrelevant.  His state of mind in March 2008 is irrelevant.

THE COURT:  The Court will overrule the objection at this point.

BY MR. EZZELL:

Q.  So he answers to the affirmative, that he may have harmed a woman in the past.

A.  Yes.

Q.  Did you ask more detail or more questions about those incidents?

A.  He basically was forthcoming on his own.  He seemed to want to tell me about these incidents.  I asked him some specifics about whether the victim was 12 years old or older.  He stated that she was less than 12.  But he knew exact—exactly what he was telling me.  He knew he was describing a beating.  He knew he—he was telling me that the victim was, to his knowledge, neither dead or alive.  He didn't know.  But that—that he sexually assaulted the victim after beating the victim. He talked about going hunting for women.

Q.  Well, let me I'll get to that in a moment.  But let me come back to at some point, did you ask him did you kill this young lady, or did this result in death?

MR. HEDRICK:  Same objection, Your Honor.  Relevance.  It's bad—it's just bad character evidence unless they can relate this back to his state of mind on (sic) March 2006.

THE COURT:  Given the representation that it will relate, as earlier offered by the State, the Court will overrule the objection.
. . . .
Q [by the prosecutor].  Did you—either through other information you've obtained, or through the Defendant himself, did you obtain a criminal history of the Defendant?  I'm looking now at page six, entitled criminal history.

A.  Well, I read a lot of the data that was supplied to me; the reports.  And I note one of the evaluators—he said that he had four arrests.  In reality, he has quite an extensive criminal history.  And the criminal history in itself should be consistent with somebody with thought disorder.  People with thought disorder have crimes like open container, resisting arrest with or without violence, vagrancy types of things.  Mr. McGill has a criminal history that started at age 16 for burglary, aggravated stalking, personal crime, damaged property, trespassing, probation violation, two counts; traffic violation, robbery, burglary, two counts; larceny, two counts; driving without a valid drivers license.

MR. HEDRICK:  Objection, Your Honor.  Unless this is going somewhere, we object as this being nothing but bad character evidence. Unless this ties in somehow to the evaluation or to the mental state of Mr. McGill in March 6 of 2006, it's irrelevant.

THE COURT:  Mr. Ezzell, do you wish to address that with the witness?

MR. EZZELL:  Well, yes.  Let me reask [sic] the question.  Once I reask [sic] it, he can make his objection, and then I'll argue it.  Let me ask, Dr. Waldman—so I'll withdraw the last question.

Let me ask you, Dr. Waldman.  When we see crimes like pawnbroker transaction fraud, forgery, uttering a forgery, burglary and robbery, are those crimes consistent with insanity?

A.  No.  They're not consistent with the type of mental illness that would lead to any insanity defense of any type in any jurisdiction.  This these types of crimes are committed by people with intact minds, albeit that they can be disturbed.  They're not the crimes that you see in schizophrenic populations.

(Ex. G at 212–15, 220–21).

On cross-examination, Attorney Hedrick elicited testimony from Dr. Waldman

that the information Petitioner relayed regarding past criminal behavior was not

necessarily accurate:

Q.  But when he was talking about harming other women.  That you—you're relying upon what he's telling you at that point.

A.  That's who I'm evaluating.  Yes, sir.

Q.  So you have to assume for the—for the ac—you're assuming then that the information he's giving you is accurate?

A.  I don't have anything to tell me that the crimes that he says he perpetrated are accurate.  What I do have is knowledge that he says he perpetrated them, and that that is accurate.
. . . .
Q.  With regards to his statements about previous crimes he may have committed and harming women, all you have is his word for that.  Isn't that correct?

A.  I have his statements.

Q.  You have no police reports to verify any of that information, that any of that ever took place.

A.  I never claimed to.

Q.  So what he told you all about that could easily be false.

A.  He has told different things to different evaluators on numerous occasions.  There are things he told me could have been false, sure.

(Ex. G at 225–26).

The record demonstrates that Attorney Hedrick attempted to keep out Dr. Waldman's testimony about Petitioner's criminal history, and Hedrick brought out the fact that the criminal history relayed by Dr. Waldman was probably not Petitioner's true criminal history.  Petitioner thus failed to show deficient performance by Attorney Hedrick with regard to Dr. Waldman's testimony.

Moreover, the record demonstrates that the parties stipulated that Petitioner had been previously convicted of robbery in Putnam County and grand theft in Columbia County (*see* Ex. D at 337, Ex. E at 349; *see also* Ex. C at 240). The trial court designated Petitioner a habitual violent felony offender based upon his prior convictions (Ex. E at 371).

Finally, with regard to Petitioner's complaint that Attorney Hedrick failed to object to the prosecutor's labeling Petitioner's past crimes as "white collar crimes" and "crimes of scheming and planning" during closing arguments, Petitioner failed to show that he was prejudiced by Hedrick's failure to object.

Petitioner faults Attorney Hedrick for failing to object to the following comment by the prosecutor during closing arguments:

> His criminal history or his past crimes are inconsistent with insanity. As Dr. Waldman points out—and we all know this from our common experience, working in the criminal justice system—Your Honor, acting as fact-finder here, Your Honor is the jury. You can bring your common experience to this verdict, just as you should, just as six members of the jury would have; six laypersons. Your Honor knows, as do we all, that these types of prior crimes are not consistent with insanity; robbery, burglary, pawn broker transaction fraud, forgery, uttering a forgery. The last three are what we would almost call white collar crimes. Dr. Waldman's correct in pointing out the types of crimes that the insane commit are the vagrancy crimes; open container, trespass, staying in a park after dark. Those are crimes of insanity.

> His prior crimes are crimes of planning.  Forgery, uttering the forgery, pawn broker transaction fraud.  Those are crimes of planning. Those are crimes of scheming.  Those are not crimes of insanity.

(Ex. G at 259).

Attorney Hedrick responded to that portion of the prosecutor's argument as follows:

> The prior offenses.  All these things which Mr. McGill supposedly talked to Dr. Waldman about—We have no clue whether any of that ever happened.  We've got Dr. Waldman reporting that this is what Mr. McGill told him.  We know Mr. McGill is a horribly unreliable historian about facts.  There's no support of that.  So I throw that off. The Court can do with it what it wants, but I think that that whole line of evidence is totally insignificant and unrelated and has no impact on the case whatsoever.

(Ex. G at 270).

There is no reasonable probability that the prosecutor's comments regarding Petitioner's criminal history affected the trial court's rejection of Petitioner's insanity defense.  As previously noted, the trial court set forth the basis for its finding of guilt in the  court's order finding Petitioner guilty of the charges:

2)  The Defendant has entered a plea of not guilty by reason of insanity.

A plea of not guilty by reason of insanity requires that the Defendant prove by clear and convincing evidence that:

a.  He had a mental infirmity, disease, or defect.

    b.  Because of this condition

        l.  He did not know what he was doing or its consequences or

        2.  Although he knew what he was doing and its consequences, he did not know it was wrong.

3)  While it is apparent from the disturbing evidence and the expert witness testimony presented at trial that the Defendant has a mental disease or defect, the Defendant has failed to prove that he did not know what he was doing or its consequences or that his actions were wrong. The evidence presented at trial showed, among other details, that the Defendant

    a.  took actions to hide his identity while making phone calls to the victim.

    b.  took pleasure in causing the victim distress by his actions.

    c.  recognized that his disturbing drawings are an outlet for his urges to harm women.

    d.  appears to have been faking or malingering as to the audio hallucinations that he claimed.

    e.  claims to have harmed other women, but has withheld the details when pressed, claiming the Fifth Amendment.

(Ex. A at 197–99).

It is evident that the court's finding of guilt was not influenced by the references to Petitioner's prior acts involving fraud or forgery.  Instead, the finding of guilt was influenced by Dr. Waldman's testimony that Petitioner told him he had previously

harmed other women but when Waldman questioned Petitioner further, Petitioner "claimed the Fifth," which suggested that Petitioner knew what he was doing and its consequences, and that he knew his actions were wrong.

The state court reasonably determined that Petitioner failed to show ineffective assistance by Attorney Hedrick with regard to Hedrick's alleged failure to object to comments and testimony regarding Petitioner's criminal history, on grounds of "misrepresentation, fabrication, and irrelevance."  Therefore, Petitioner is not entitled to relief on Ground One, sub-claim (k).

        l.       "Counsel disclosed confidential comments to prosecution that were used against Defendant."

Petitioner alleges he told Attorney Hedrick on the day of trial that he was concerned that the trial judge was female (ECF No. 18 at10).  Petitioner alleges Attorney Hedrick must have disclosed Petitioner's concern to the prosecutor, because the prosecutor commented during closing arguments that Petitioner was concerned about having a female judge, without revealing how he (the prosecutor) knew about Petitioner's concern (*id.*).  Petitioner contends Attorney Hedrick should have objected to the prosecutor's comment (*id.*).

Petitioner presented this claim as Ground 1(l) of his Rule 3.850 motion (Ex. K at 11).  The state circuit court adjudicated the claim as follows:

> As to Ground One - (l), Defendant alleges that trial counsel was ineffective for disclosing confidential comments to prosecution which prosecution used against Defendant.  This claim is conclusively refuted by the record.  *See* Trial Transcript at 189 (lines 9–11).

(Ex. K at 75).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

The state court's determination is correct.  During the prosecutor's cross-examination of one of the defense experts, Dr. Levin, the prosecutor questioned Levin about his competency evaluation of Petitioner in May of 2007 (Ex. G at 187–88).  The report of Dr. Levin's evaluation of May 14, 2007, was admitted into evidence (*see id.* at 155–56).  Dr. Levin's report stated the following, in relevant part:

> 5.    *Ability to manifest appropriate courtroom behavior: Questionable*
>
> Mr. McGill reported that he would not be cooperative or tolerate negative statement made against him during a courtroom hearing.  In this context, he indicated that he would "yell out" if misrepresented.  This comment appears somewhat manipulative in that Mr. McGill has not evidenced any inappropriate behaviors in the series of interviews he has participated in.  However, his comment does reflect a negative, and perhaps paranoid, attitude towards the Court.  In addition, he stated a belief that he would not receive a fair trial if he was before a female judge.

(Ex. A at 85).

The prosecutor asked Dr. Levin about his aspect of his report:

Q.   It was questionable for ability to maintain appropriate courtroom behavior?  Correct?

A.  Correct.

Q.  You were concerned that his answer to that may be somewhat manipulative.  He indicated he would yell out.  Correct?

A.  Yes.

Q.  And that was sort of incongruent with his behavior and his demeanor in all the times you dealt with him.  Correct?

A.  Correct.  Yes.

Q.  Where he's been well-behaved.  Correct?

A.  Correct.

Q.  He did express concerns about a hearing in front of a female Judge.  Correct?

A.  Yes.

(Ex. G at 188–89).

The record demonstrates that the source of the prosecutor's comment about Petitioner's concern that he would not receive a fair trial by a female judge was Dr. Levin, not Attorney Hedrick.  The state court reasonably rejected Petitioner's IATC claim based upon Attorney Hedrick's alleged disclosure of Petitioner's confidential

communication and the prosecutor's comment.  Petitioner is not entitled to federal

habeas relief on Ground One, sub-claim (l).

> m.    "Counsel failed to object and challenge the State's use of expert witness testimony that violated court rules and procedure."

> n.    "Counsel failed to object to use of competency evidence that violated court rules and procedure."

Petitioner claims that Attorney Hedrick was ineffective for failing to object to

the testimony of Dr. Werner, and failing to object to the admission of the competency

reports of Dr. Werner and Dr. Waldman (ECF No. 18 at 10–11).  Petitioner alleges the

only issue at trial was his sanity at the time of the offenses; therefore, Attorney

Hedrick should have objected to admission of the testimony of Dr. Werner and the

competency reports of Drs. Werner and Waldman, on the ground that this evidence

was inadmissible under Rule 3.211(d) of the Florida Rules of Criminal Procedure,

which prohibits the use of competency evidence unless the defense uses it first (ECF

No. 18 at 10; ECF No. 24 at 6–7).

Petitioner presented these claims as Supplemental Grounds (L) and (M) of his

Rule 3.850 motion (Ex. K at 35).  The state circuit court adjudicated the claims as

follows:

> As to Supplemental Ground (L), Defendant alleges that trial counsel was ineffective for failing to object and challenge the State's use

of expert witness [sic] that violated Rules of Court. According to Defendant, it was error for this expert to testify because her evaluation of Defendant was confidential. The expert at issue was appointed by the court to evaluate Defendant's competency to proceed. *See* Order Appointing Expert for Competency Evaluation (filed May 20, 2008); Psychological Evaluation (Dr. Tonia Werner) (filed June 13, 2008); Trial Transcript at 104–107. Thus, both her evaluation and trial testimony were admissible. For this reason, counsel did not err by failing to object. Accordingly, the claim raised is without merit.

As to Supplemental Ground (M), Defendant alleges that trial counsel was ineffective for failing to object to the use of competency evidence that violated Rules of Court. According to Defendant, counsel allowed the State to introduce two competency evaluations into evidence that were confidential and prejudicial to his insanity defense. *See* Trial Transcript at 60 (lines 6–25) – 61 (lines 1–21). The record reflects that both of the evaluations were already in the record prior to trial. *See* Psychiatric Evaluation (filed October 20, 2006); Order Appointing Expert to Evaluate Defendant's Sanity at the Time of the Offense (filed May 9, 2007). They were both also the product of a court-ordered evaluation. Thus, both evaluations were admissible anyway. For this reason, counsel did not err by failing to object to their admission. Accordingly, the claim raised is without merit.

(Ex. K at 76–77). The First DCA affirmed the circuit court's decision without written

opinion (Ex. O).

Rule 3.211 provides, in relevant part:

**(d) Limited Use of Competency Evidence.**

(1) The information contained in any motion by the defendant for determination of competency to proceed or in any report of experts filed under this rule insofar as the report relates solely to the issues of competency to proceed and commitment, and any information elicited

during a hearing on competency to proceed or commitment held pursuant to this rule, shall be used only in determining the mental competency to proceed or the commitment or other treatment of the defendant.

(2) The defendant waives this provision by using the report, or portions thereof, in any proceeding for any other purpose, in which case disclosure and use of the report, or any portion thereof, shall be governed by applicable rules of evidence and rules of criminal procedure.  If a part of the report is used by the defendant, the state may request the production of any other portion of that report that, in fairness, ought to be considered.

Fla. R. Crim. P. 3.211(d).

The trial transcript demonstrates that the State did not present the testimony of Dr. Werner or the competency reports of Dr. Werner and Dr. Waldman in its case in chief.  The only evidence presented in the State's case in chief were the documents included in State's composite Exhibit 1, which included a petition for injunction for protection against repeat violence executed by Cassie Nowacki, a temporary injunction for protection against repeat violence, a return of service showing that the temporary injunction was served upon Petitioner, a final judgment of injunction for protection against repeat violence, another return of service showing that the final injunction was served upon Petitioner, affidavits of Cassie Nowacki alleging violations of the final injunction, a first appearance order issued in the criminal case, a letter and envelope authored by Petitioner and addressed to Cassie Nowacki

postmarked April 28, 2006,[13] a series of drawings authored by Petitioner, incident reports from the Alachua County Sheriff's Office, and transcripts of several depositions (Ex. A at 6–9).

The defense then presented its case, including, the admission of competency reports of Dr. Adu, Dr. Levin, Dr. Gabb (a psychiatrist with the North Florida Evaluation and Treatment Center), and Dr. Infante (also a psychiatrist with the NFETC). Although Dr. Adu and Dr. Levin also evaluated Petitioner's sanity at the

---

[13] The letter from Petitioner to Cassie Nowacki stated the following:

What's up Beautiful? Miss me? Oh I miss you too! I can't wait to see you! I have something to show you! It's a 9-mm I purchased from a friend in March. It's Beautiful, just like you, and has a mag full of golden shells with the word "Cassie" on all of them!! Aren't you excited!!! See you kinda made me mad! The only reason youre [sic] still alive anyway is because I wanted to fuck you and taste that pussy, before I cut your throat out! NOW you gotta pay! I could have someone do [sic] it but I NEED to. I'm gonna unload every single bullet in your head Bitch!! I think I'll surprise you one day when youre [sic] leaving work. In the parking lot!! No one can stop me Sweetie! I wont [sic] stop until youre [sic] D.E.A.D!!! I know everything about you now!! Your address, phone # and where you work. I cant [sic] wait to get my hands on you! No matter how long it takes. I'll get you—I PROMISE!!! Well, until then Sweetie I'll be thinking about you!! I'm sure you'll be thinking of me too. I'll be busy for a little while. I just want you to know I have NOT forgot [sic] about you!! And as soon as I get the chance, you're gonna pay!! I'll CALL you later babe.

1, 2.  I am coming for You!
3, 4.  Better lock your Door!
5, 6.  You'll Fuck and Suck my dick!
7, 8.  I'll Cum in shoot you in the Face!
9, 10.  I'll rip off your SKIN!

(Ex. A at 29–31). The letter included a drawing of a headstone with the victim's name and a heart on it, with a woman's head leaning against it (*id.*).

time of the offenses, their competency reports were admitted into evidence.  Dr. Gabb and Dr. Infante evaluated only Petitioner's competency.  The defense thus used the competency reports in presenting the insanity defense, and did so prior to the State's admission of any competency reports.

In rebuttal, the State presented testimony from Dr. Werner and Dr. Waldman, as well as their reports.  Dr. Waldman evaluated Petitioner for both competency and sanity.  Dr. Werner evaluated only Petitioner's competency.  Apparently it is Dr. Werner's testimony that Petitioner contends Attorney Hedrick should have sought to exclude, since she did not evaluate Petitioner's sanity.

In rejecting Petitioner's IATC claims involving Attorney Hedrick's failure to object to Dr. Werner's testimony or to Dr. Werner's and Dr. Waldman's competency reports, the First DCA could have theorized that Petitioner waived limitation of the use of the competency reports by using competency evidence prior to the State's use of it.  Further, even though the purpose of Dr. Werner's evaluation was to determine Petitioner's competency, Dr. Werner's testimony and report did not relate solely to the issue of competency.  Dr. Werner testified that based upon her interview with Petitioner, her review of the police reports of the charges, her review of the evaluations of the other mental health experts, and her observations of the testimony

of Dr. Adu (one of the defense experts), she observed indications that Petitioner knew right from wrong at the time of the offenses in March of 2006 (*see* Ex. F at 106–24, Ex. G at 151–52). Dr. Werner testified that during her interview with Petitioner, she inquired about the aggravated stalking charge, which accused Petitioner of following or harassing Cassie Nowacki (Ex. F at 112–13). Dr. Werner testified that Petitioner responded that he was aware he had been ordered not to contact Ms. Nowacki but he did so anyway (*id.*). Dr. Werner also testified that Petitioner admitted in his interview that he had lied to prior evaluators when he told them he suffered from auditory and visual hallucinations (*id.* at 111, 113–14). Additionally, Dr. Werner offered her opinion that Petitioner did not suffer from a major mental illness, but he did warrant a diagnosis of antisocial personality disorder, based on his pervasive pattern of disregard for a violation of the rights of other since before the age of 15 years (Ex. F at 114–15, Ex. G at 142–43). Dr. Werner clearly testified that she did not have an opinion as to the issue of Petitioner's sanity at the time of the offense (Ex. F at 123–24, Ex. G at 153). However, her observations of Petitioner during her interview were relevant to the issue of Petitioner's sanity.

Dr. Waldman, the State's other expert, evaluated both Petitioner's competency and sanity. Petitioner does not contend that Dr. Waldman's testimony or his report

on sanity was inadmissible.  Although Petitioner contends Dr. Waldman's report on

competency was objectionable, Dr. Waldman's competency report did not relate

solely to the issue of Petitioner's competency.  Dr. Waldman's report also related to

the issue of Petitioner's sanity at the time of the offense, for example, whether

Petitioner suffered from a mental infirmity, disease, or defect.

Based upon the trial record, the state court could have reasonably concluded

that Attorney Hedrick was not deficient for failing to object to the testimony of Dr.

Werner and the admission of the competency reports of Dr. Werner and Dr. Waldman.

Additionally, the state court could have reasonably concluded that Petitioner failed to

show a reasonable probability of a different outcome at trial if Attorney Hedrick had

objected to admission of this evidence.

Petitioner failed to demonstrate that the state court's adjudication of Ground

One, sub-claims (m) and (n) was an unreasonable application of Strickland.

Therefore, he is not entitled to federal habeas relief on these claims.

> o.      "Counsel failed to challenge untrue testimony by the State
> regarding evidence that tainted fundamental fairness and integrity
> of the trial."

Petitioner alleges the documents admitted into evidence at trial as State's

composite Exhibit 1 included some of Petitioner's drawings/artwork that did not relate

to the victim, even though the prosecutor stated at sentencing that the only drawings/artwork admitted at trial were relevant to the victim (ECF No. 18 at 11). Petitioner contends Attorney Hedrick was ineffective for failing to inspect State's composite Exhibit 1 and object to admission of the drawings/artwork that did not relate to the victim (*id.*). Petitioner also appears to contend Hedrick should have objected to the State's comment at sentencing, that the trial court saw only drawings/artwork related to the victim, on the ground that this comment was false because drawings/artwork unrelated to the victim were introduced at trial in State composite Exhibit 1 (*id.*).

Petitioner presented this claim as Supplemental Ground (N) of his Rule 3.850 motion (Ex. K at 36).  The state circuit court adjudicated the claim as follows:

> As to Supplemental Ground (N), Defendant alleges that trial counsel was ineffective for failing to object to incorrect testimony by prosecution and judge regarding evidence.  According to Defendant, counsel should have objected to the artwork which he created (and which he claimed in Ground One - (h) was not proven to be his) that was introduced by the State at sentencing.  Defendant contends that the artwork was irrelevant because he created it 2–3 years after the offenses were committed.  The artwork was introduced to show Defendant's ongoing disturbing mental state; not to show his mental state at the time of the offense.  *See* Sentencing Transcript at 20 (lines 1–17).  Thus, counsel could not have objected to it on the basis that it was irrelevant.  Accordingly, the claim raised is without merit.

(Ex. K at 77). The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

At trial, defense counsel described the drawings/artwork authored by Petitioner and included in State's composite Exhibit 1 as having been provided to the State Attorney's Office and the sheriff's office from Meridian Behavioral Healthcare, where the victim was employed (Ex. F at 5–6). According to the Evidence Inventory of Petitioner's criminal case, State's Exhibit 1, which was marked on February 19, 2009 (the day of Petitioner's trial), included 28 pages of "injunction" documents, 12 pages of Petitioner's drawings, 48 pages of reports from the Alachua County Sheriff's Office, and 104 pages of depositions (Ex. A, Evidence of Inventory for 01-2006-CF-001614-A, page 13 of 15; ECF No. 27-1 at 49). Petitioner failed to show that drawings/artwork unrelated to the victim were admitted at trial in State's composite Exhibit 1.

To the extent Petitioner contends Attorney Hedrick should have objected to the State's submitting additional items of Petitioner's drawings/artwork at sentencing, on the ground that they were irrelevant, the state court reasonably rejected this claim. Rule 3.720 of the Florida Rules of Criminal Procedure requires the sentencing court to "entertain submissions and evidence . . . that are relevant to the sentence." Fla. R.

Crim. P. 3.720(b).  According to the Pre-Sentence Investigation report, Petitioner's

drawings depicted women being tortured, drugged, and killed (*see* Ex. C at 243–44).

The state court determined that the artwork/drawings were relevant to the issue of

Petitioner's "ongoing disturbing mental state."  Indeed, the drawings were probative

of the issue of the danger Petitioner posed to the community if he was allowed to

return to it instead of being incarcerated.  The validity of the objection that Petitioner

faults Attorney Hedrick for not making (i.e., that the drawings/artwork were

irrelevant) is clearly a question of state law.  The state court determined that the

materials were admissible at sentencing.  This federal court must defer to the state

court's determination of state law.  Attorney Hedrick's failure to make a relevancy

objection at sentencing cannot be deemed deficient performance, and Petitioner cannot

show he was prejudiced by counsel's failure to make the objection, because it had no

arguable basis for success.  Therefore, Petitioner is not entitled to relief on Ground

One, sub-claim (o).

> p.    "Counsel failed to include Defendant in numerous
> proceedings."

Petitioner alleges during the period September 25, 2008 to February 11, 2009,

defense counsel "excluded" Petitioner from pre-trial conferences, trial status

conferences, and other court proceedings without Petitioner's waiver or consent (ECF

No. 18 at 12).  Petitioner alleges that during one of these proceedings, the State was permitted to "correct" the dates and times of one of the offenses charged in the information, to which Petitioner would have objected had he been present (*id.*).

Petitioner presented this claim as Supplemental Ground (O) of his Rule 3.850 motion (Ex. K at 36).  He alleged that he was not present at six case management and pretrial hearings/conferences during the period September 25, 2008 to February 11, 2009 (*id.*).  The state circuit court adjudicated the claim as follows:

> As to Supplemental Ground (O), Defendant alleges that trial counsel was ineffective for failing to object to numerous non-appearances by Defendant in proceedings.  The record reflects that Defendant's non-appearances were the product of his refusal to come to court.  *See* Court Action Memos.  Regardless, counsel was presented [sic] during these case management conferences; and, there is no evidence that anything substantive happened on these dates which prejudiced Defendant.  *Id.*  For this reason, Defendant fails to show either error by counsel or prejudice.  Accordingly, the claim raised is without merit.

(Ex. K at 77).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

A criminal defendant's constitutional right to be present at all critical stages of the proceedings is rooted in the Confrontation Clause of the Sixth Amendment, but the Supreme Court has recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses

or evidence against him. *See* United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985) (citation omitted). In Snyder v. Massachusetts, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934), the Supreme Court explained that a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.*, 291 U.S. at 105–06. Although the Supreme Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," *id.* at 106–07, due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," *id.* at 108. "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987).

The Docket Sheet Summary of Petitioner's case indicates that all of the proceedings held between September 25, 2008 and February 11, 2009, were case management, pre-trial, and trial status conferences (*see* Ex. A, Docket Sheet

Summary, Entry Nos. 196, 202, 208, 220, 225, 231, 237).  Petitioner failed to show

that any of those conferences was critical to the outcome of the criminal proceeding,

or that his presence would have contributed to the fairness of any of those pre-trial

conferences.  Further, the prosecutor's amending the information to change the dates

of one of the offenses occurred in Petitioner's presence at trial (*see* Ex. F at 9–10).

The state court's adjudication of Petitioner's IATC claim was not based upon

an unreasonable determination of fact.  Nor was it contrary to or an unreasonable

application of <u>Strickland</u>.  Petitioner is not entitled to relief on Ground One, sub-claim

(p).

> q.    <u>"Counsel misadvised Defendant into waiving jury trial."</u>

Petitioner alleges Attorney Hedrick advised him to waive a jury trial because

a judge would be more understanding and lenient in a case dealing with mental illness

(ECF No. 18 at 12).  Petitioner alleges this prejudiced him, because Hedrick "used a

false promise to steer [him] away" from exercising his constitutional right to a jury

trial a jury trial, with no strategic reason for doing so (*id.*).

Petitioner presented this claim as Supplemental Ground (S) of his Rule 3.850

motion (Ex. K at 38).  The state circuit court adjudicated the claim as follows:

> As to Supplemental Ground (S), Defendant alleges that trial
> counsel was ineffective for misadvising Defendant in waiving jury trial

stating judge [sic] would be lenient and understanding of mental illness. According to Defendant, he would not have waived his right to a jury trial if he had known that he would receive a sentence of 30 years imprisonment.  This claim is nonsensical because that same sentence could have been imposed if Defendant had been convicted after a jury trial.  Essentially, Defendant is arguing that a jury would have acquitted him.  "The possibility of a jury pardon cannot form the basis for a finding of prejudice." *Sanders v. State*, 946 So. 2d 953, 960 (Fla. 2006). For this reason, Defendant fails to show either error by counsel or prejudice.  Accordingly, the claim raised is without merit.

(Ex. K at 79).  The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

The state court reasonably concluded that Petitioner failed to show deficient performance by Attorney Hedrick.  Given the complex nature of an insanity defense, including the nature of the evidence (i.e., testimony and reports of mental health experts), Florida's legal standard for insanity, and the burden of proof, it would not be unreasonable for defense counsel to advise a defendant that an insanity defense had a greater likelihood of success if tried to a judge instead of a jury.[14]  *See, e.g.*,

---

[14] As previously discussed, in Florida, insanity is established when:

(a) The defendant had a mental infirmity, disease, or defect; and

(b) Because of this condition, the defendant:

1.  Did not know what he or she was doing or its consequences; or

2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.

<u>Woodward v. State</u>, 992 So. 2d 391, 394 (Fla. 1st DCA 2008) (describing intoxicant-induced insanity defense as involving complex medical issues).

Petitioner failed to demonstrate that the state court's adjudication of Ground One, sub-claim (q) was contrary to or an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to federal habeas relief on this claim.

> r.   <u>"Counsel submitted evidence that was harmful to defendant."</u>

Petitioner alleges Attorney Hedrick was ineffective for admitting the competency evaluations of the defense experts (Dr. Adu and Dr. Levin) into evidence, because the only relevant evaluations were their sanity evaluations (ECF No. 18 at 12). Petitioner alleges the State used the competency evaluations to prove that Petitioner was feigning mental illness (*id.*).

Petitioner presented this claim as Supplemental Ground (T) in his Rule 3.850 motion (Ex. K at 38). The state circuit court adjudicated the claim as follows:

> As to Supplemental Ground (T), Defendant alleges that trial counsel was ineffective for failing to know the law applicable and favorable to Defendant's case. According to Defendant, counsel erred by allowing the State to introduce his competency evaluations into evidence at trial. The competency evaluations that were introduced into evidence at trial were neither privileged nor irrelevant. These

---

Fla. Stat. § 775.027(1). The defendant has the burden of proving the defense of insanity by clear and convincing evidence. *See* Fla. Stat. § 775.027(2).

> evaluations were relevant to show that Defendant was inconsistent and malingering in his self-reporting of symptoms. *See* Trial Transcript at 250–275. For this reason, counsel did not err by allowing these evaluations into evidence. Accordingly, the claim raised is without merit.

(Ex. K at 79). The First DCA affirmed the circuit court's decision without written opinion (Ex. O).

The state court reasonably concluded that the competency evaluations of all of the testifying experts contained information relevant to the issue of Petitioner's sanity. Three of the four testifying experts evaluated Petitioner's competency and his sanity, and all of the experts interviewed Petitioner during the course of their evaluations. Even though the experts were requested to address the specific issue of competency during some evaluations, the information they obtained during all of their evaluations was relevant to the issue of Petitioner's sanity, including the issue of whether Petitioner suffered from a mental infirmity, disease, or defect. Additionally, although Petitioner blames Attorney Hedrick for entering the competency reports into evidence, Attorney Hedrick did so only after the trial judge inquired as to whether the reports from both types of evaluations would be entered into evidence and stated that "it would be of great assistance" to the court (*see* Ex. F at 60–61).

Petitioner failed to show a reasonable probability that if Attorney Hedrick had <u>not</u> admitted the competency reports of Dr. Adu and Dr. Levin, there is a reasonable probability the trial court would have found that the evidence clearly and convincingly established that Petitioner was insane at the time he committed the offenses.  The state court's rejection of Petitioner's IATC was not an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One, sub-claim (r).

B.    <u>Ground Two:  "Cumulative error constitutes ineffective assistance of counsel and denial of due process."</u>

Petitioner alleges defense counsel committed numerous errors during trial, and the cumulative effect of those deficiencies violated his constitutional rights to effective assistance of counsel and due process (ECF No. 18 at 13–14).  Petitioner states he did not present this claim to the state courts, because he believed that the cumulative effect of his individual claims of IATC would be automatically considered without his presenting it as a separate claim (*id.* at 14, 25–26).

Respondent contends a freestanding "cumulative effect" claim is not cognizable in federal habeas (ECF No. 20 at 30–31).  Respondent further contends that none of Petitioner's individual IATC claims warrant relief; therefore, his "cumulative effect" claim must be denied (*id.* at 31).

Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[15] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254.  *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d

---

[15] *See* United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.") (internal quotations and citations omitted); United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995) and citing United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996)).

1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).

In any event, cumulative effect analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (cumulative error claim fails in light of the absence of any individual errors to accumulate); United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist). Thus, Petitioner must show error with respect to at least two of his individual claims.

As previously discussed, Petitioner has not shown an error of constitutional dimension with respect to any of the alleged individual errors of trial counsel. Therefore, no cumulative effect or error can exist. Petitioner is thus not entitled to relief on Ground Two.

### C.    Ground Three:  "Evidence was constitutionally insufficient to sustain verdict."

Petitioner alleges the State failed to present sufficient evidence to prove his sanity (ECF No. 18 at 14).  He alleges throughout trial, the State attempted to prove that Petitioner was sane in the years prior to the crimes, and that he was sane after the crimes were committed, which is not what the jury instructions require (*id.*).  Petitioner alleges the jury instructions state that the issue "is not whether the defendant is insane today or has ever been insane but whether instead the defendant was insane at the time of the crime" (*see* ECF No. 18 at 14; *see also* Ex. P, Motion for Rehearing).  Petitioner alleges the trial court's order finding him guilty "validates that the key element to convict" was not satisfied, because the reasons listed for rejecting the insanity defense "contradicts the jury instructions element [sic] to convict" (ECF No. 18 at 14).  Petitioner states he did not present this issue on direct appeal, but he presented it to the First DCA in a motion for rehearing of the appellate court's affirmance in the Rule 3.850 appeal (*id.* at 16–17).

Respondent contends Petitioner failed to properly exhaust this claim because he did not fairly present it to the state court in a procedural context in which the merits would be considered (ECF No. 20 at 31–34).  Respondent contends a challenge to the sufficiency of the evidence is properly raised on direct appeal, but Petitioner did not

present it on direct appeal (*id.*).  Further, Petitioner's presenting the claim for the first time in a motion for rehearing of the First DCA's affirmance of the circuit court's order denying the Rule 3.850 motion was not a proper context in which to present the claim (*id.*).  Respondent contends the claim is thus procedurally barred under state law, and procedurally defaulted for purposes of federal habeas (*id.*).

Submitting a claim to the state court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation.  *See* <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989).  Rule 9.330(a) of the Florida Rules of Appellate Procedure states in material part that a motion for rehearing must "state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended in its decision, and shall not present issues not previously raised in the proceeding."  This rule expressly limits the issues to those already presented to the appellate court.  Additionally, an issue that was not properly and timely presented to the lower court is not cognizable on appeal.  *See* <u>Cave v. State</u>, 899 So. 2d 1042, 1052 (Fla. 2005).

Here, the state court record demonstrates that Petitioner did not present his sufficiency-of-the-evidence claim to the state circuit court in the Rule 3.850

proceeding, and his presenting it for the first time in his motion for rehearing of the First DCA's decision in the Rule 3.850 appeal (*see* Ex. P) was procedurally improper. Therefore, the claim is procedurally barred from federal review.

Petitioner has not shown he is entitled to a merits review of his claim through the "cause and prejudice" portal or any recognized exception to the procedural bar. Therefore, he is not entitled to a federal merits review of Ground Three.

> D.   <u>Ground Four:  "It constituted a miscarriage of justice and denial of due process to convict the defendant of the offense of written threats to kill or do bodily injury when the State has failed to prove an element that is essential to the commission of the crime."</u>

Petitioner contends his conviction of Count II, written threats to kill or do bodily injury, constitutes a fundamental miscarriage of justice, because the evidence was insufficient to show that the person being threatened in the April 28, 2006 letter (i.e., the victim, Cassie Nowacki) received the letter (ECF No. 18 at 18–20). Petitioner argues that the depositions of Ms. Nowacki and Ms. Shin Lay Chu demonstrate that Ms. Nowacki was on vacation at the time Petitioner's letter was received at Meridian Behavioral Healthcare, and Ms. Shin Lay Chu, a co-worker, opened the letter and provided it to authorities before Ms. Nowacki saw it (ECF No. 18. at 19–24; ECF No. 24 at 12–15).

Respondent contends the issue is unexhausted and procedurally barred (ECF No. 20 at 40–41).  Respondent contends Petitioner has not offered justifiable cause for the failure to exhaust, nor can he establish the requisite prejudice, because there is no requirement under Florida Statutes § 836.10 that the intended victim be the person to actually open the letter (*id.* at 41–46).

Petitioner states he did not present this issue on direct appeal, because his court-appointed counsel did not raise it (ECF No. 18 at 18).  Petitioner also admits he did not present the claim in any post-conviction proceedings, because it was a "newly discovered issue" (*id.* at 25–26).  Petitioner contends he is entitled to federal review of Ground Four under the "fundamental miscarriage of justice" exception (ECF No. 24 at 11–15).

Construing Petitioner's allegations as asserting a claim of ineffective assistance of appellate counsel, Petitioner has not established cause for his failure to present the claim on direct appeal.  Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts.  *See* Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).  In Florida, a claim of

ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003).  Here, Petitioner did not present a claim of ineffective assistance of appellate counsel to the First DCA, and the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired.  Therefore, any such claim could not serve as cause for the procedural default of his claim.

Additionally, Petitioner is not entitled to a merits review of Ground Four through the "fundamental miscarriage of justice" gateway.  As previously discussed, to obtain federal review through this gateway, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup, 513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Id.*  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Here, Petitioner has presented no new evidence of his actual innocence.  The transcripts of the depositions of Ms. Nowacki and Ms. Chu were included in the evidence admitted at trial and thus are not "new" evidence (*see* Ex. F at 6).  The fact that Petitioner only recently discovered the legal basis for his sufficiency-of-the-evidence claim related to Count II does not render the evidence underlying that claim "new" for purposes of <u>Schlup</u>.  Therefore, Petitioner is not entitled to a federal merits review of Ground Four.

V.      CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the

only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).   The petitioner here cannot make that showing.   Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.	That the amended petition for writ of habeas corpus (ECF No. 18) be **DENIED**.

2.	That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>5</u><sup>th</sup> day of June 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**